IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ROGER TIEMANN and DONNA          §
TIEMANN,                         §
                                 §
        Plaintiffs,              §      Civil Action
                                 §      No. C-07-311
v.                               §
                                 §
SPIN MASTER LTD.,                §
SPIN MASTER, INC., SWAN PLASTIC  §
PRODUCTS (HK), LTD., and SPIN    §
MASTER FAR EAST, LTD.,           §
                                 §
        Defendants.              §

**ORDER DENYING MOTION TO DISMISS**

On this day came on to be considered Defendant Swan Plastic Products (HK) Ltd.'s (hereinafter, "Swan") motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) (D.E. 35). Specifically, Swan moves to dismiss the claims of Plaintiffs Roger Tiemann and Donna Tiemann (hereinafter, "Plaintiffs") against Swan, on the grounds that this Court lacks personal jurisdiction over Swan as a non-resident Defendant. For the reasons set forth below, this Court does have personal jurisdiction over Swan in the above-styled action, and Swan's motion to dismiss is hereby DENIED.

**I.   Jurisdiction**

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

**II.  Factual Background**

On May 21, 2006, Plaintiff Roger Tiemann installed a new

"Bounce 'Round - Pirates of the Sea Waterslide" in the backyard of his home in Corpus Christi, Texas.  (D.E. 17, Amended Complaint, ¶ 9).  Plaintiffs Roger and Donna Tiemann purchased the waterslide at the Sam's Club in Corpus Christi.  (Id.).  Plaintiffs allege that while Mr. Tiemann was assisting his minor daughter climb up the waterslide, the slide "collapsed", "causing [Mr. Tiemann] to fall in a back flip motion onto the wading pool area."  (Id.). Plaintiffs allege that Mr. Tiemann's fall "was caused by the inadequate air pressure, rails, hand holds and stability of the [waterslide]."  (Id.).  They claim that due to design and warning failures with respect to the waterslide, Mr. Tiemann suffered "severe, permanent and disabling injuries that caused severe and excruciating physical pain and mental anguish."  (Id.).

Defendant Swan is incorporated in and has its principal place of business in Hong Kong, China.  (Amended Complaint, ¶ 5; Exh. A to Swan Motion, Tong Aff., ¶ 2).  Swan manufactured the waterslide at issue in this case at Swan's manufacturing plant in Zhongshan, mainland China.  (Id., ¶¶ 3, 5).  After manufacture, Swan delivered the waterslide to Maersk Logistics (China) Co. Ltd. ("Maersk"). (Id., ¶ 7).  Maersk served as the "freight forwarder" for Sam's Club.  (Id.).

## III. **Procedural Background**

On July 13, 2007, Plaintiffs filed their Original Complaint against Defendants Spin Master Ltd. and Spin Master, Inc. (D.E.

1).[1]   Plaintiffs filed their First Amended Original Complaint
(hereinafter, "Amended Complaint") on October 1, 2007.  (D.E. 17).
In their Amended Complaint, Plaintiffs name the following
Defendants:  Spin Master Ltd., Spin Master, Inc., Spin Master Far
East, Ltd. and Swan (together, "Defendants").[2]  In their Amended
Complaint, Plaintiffs bring claims against Defendants for
"defective product," negligence and misrepresentation.  (Amended
Complaint, ¶¶ 10-19).  Plaintiffs also allege that Defendants
"committed willful acts or omissions, gross neglect, and/or
malice," entitling Plaintiffs to recover punitive damages.  (Id.,
¶ 20).

     In accordance with the Hague Convention, Plaintiffs served
Swan on January 22, 2008 (D.E. 26, Affirmation of Service).  Swan
filed its Second Amended Original Answer, construed as its initial
pleading in the case, on April 4, 2008 (D.E. 30).[3]  In its Second

_____

     [1]In their Original Complaint, Plaintiffs brought claims
against the named Defendants for "defective product," negligence
and misrepresentation.  (Original Complaint, ¶¶ 9-18).
Plaintiffs also alleged that the named Defendants committed
willful acts or omissions, gross neglect, and/or malice,
entitling Plaintiffs to recover punitive damages.  (Id., ¶ 19).

     [2]Swan and Spin Master Far East, Ltd. were not named in
Plaintiffs' Original Complaint.

     [3]Also on April 4, 2008, Swan filed its First Amended
Original Answer to Plaintiffs' Amended Complaint (D.E. 29).
However, Swan's First Amended Original Answer contained various
administrative errors, so on May 13, 2008, this Court granted
Swan's motion to strike Swan's First Amended Original Answer from
the record.  (D.E. 42).  Per this Court's order striking Swan's
First Amended Original Answer, Swan's Second Amended Original
Answer is construed as Swan's initial pleading in this case.

Amended Original Answer, Swan raised its jurisdictional defense
pursuant to Federal Rule of Civil Procedure 12(b)(2). (<u>Id.</u>, p. 1,
¶ A, stating Swan's assertion "[t]hat this Court lacks jurisdiction
over [Swan's] person and that Defendant [Swan] has insufficient
jurisdictional contacts with the state of Texas"). On April 9,
2008, Swan filed its Third Amended Original Answer to Plaintiffs'
Amended Complaint. (D.E. 31). In its Third Amended Original
Answer, Swan again raised its Rule 12(b)(2) jurisdictional defense.
(<u>Id.</u>, p. 1, ¶ A).

On April 23, 2008, Swan filed the instant motion to dismiss
for lack of personal jurisdiction, pursuant to Federal Rule of
Civil Procedure 12(b)(2) (D.E. 35).[4] Swan argues that the Court
does not have personal jurisdiction over Swan, because Swan does
not have minimum contacts with the State of Texas, and requiring
Swan to litigate in Texas would offend traditional notions of fair
play and substantial justice.

Plaintiffs filed their response to Swan's Rule 12(b)(2) motion
to dismiss on May 12, 2008 (D.E. 41). Plaintiffs argue that the
Court does have specific jurisdiction over Swan, because Swan had
extensive knowledge that Pirates of the Sea waterslides would be

---

(<u>Id.</u>).

[4]Dispositive motions were due in this case by April 15,
2008. (D.E. 12, Scheduling Order, ¶ 4). Swan filed a motion for
an extension of time to file its motion to dismiss, which the
Court granted on April 17, 2008. (D.E. 34). The Court extended
Swan's deadline to file its Rule 12(b)(2) motion until April 29,
2008. (<u>Id.</u>).

sold exclusively at Sam's Club locations in the United States, and that it was foreseeable that one or more of the waterslides would be sold at a Sam's Club in Texas.   Plaintiffs also argue that jurisdiction over Swan would not offend traditional notions of fair play and substantial justice, because, on balance, Plaintiffs' interests and the interests of the State of Texas outweigh the burden on Swan of litigating this case in Texas.

As set forth below, Swan does have minimum contacts with the state of Texas, so as to establish specific jurisdiction over Swan regarding the claims in Plaintiffs' Amended Complaint.   Further, this Court's exercise of personal jurisdiction over Swan will not offend traditional notions of fair play and substantial justice. Accordingly, the Court must DENY Swan's Rule 12(b)(2) motion to dismiss.

IV.   **Discussion**

A.   **Rule 12(b)(2) Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(2) addresses motions to dismiss for "lack of jurisdiction over the person."   Fed. R. Civ. P. 12(b)(2).   The plaintiff bears the burden of establishing the court's personal jurisdiction over a non-resident defendant.   See Kevlin Serv., Inc. v. Lexington State Bank, 46 F.3d 13, 14 (5th Cir. 1995); Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) ("Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court

bears the burden of proving that jurisdiction exists.").

If the Court does not hold an evidentiary hearing, the Court "should not act as a fact finder[,] and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." Walk Haydel & Assocs., Inc. v. Coastal Power Production Co., 517 F.3d 235, 241 (5th Cir. 2008); see also Brown v. Slenker, 220 F.3d 411, 417 (5th Cir. 2000) ("in considering [a] motion to dismiss", "[f]actual conflicts had to be resolved in the [plaintiff's] favor"); Luv N' Care, Ltd., 438 F.3d at 469 (citing Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982)) ("This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction."); Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005) ("Plaintiffs bear the burden of proving the district court's personal jurisdiction, but relevant factual disputes will be resolved in plaintiffs' favor").

In order to survive a Rule 12(b)(2) motion to dismiss, "the plaintiff is required to present only a *prima facie* case for personal jurisdiction." Id. (citing Data Disc, Inc., v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)); Brown, 220 F.3d at 417 ("To defeat dismissal, the [defendant] was required only to present facts sufficient to constitute a *prima facie* case of personal jurisdiction."); Luv N' Care, Ltd., 438 F.3d at 469 ("The plaintiff need not ... establish jurisdiction by a

preponderance of the evidence; a *prima facie* showing suffices.");
Fielding, 415 F.3d at 424 (same).

**B.   Personal Jurisdiction**

A federal court sitting in diversity may exercise personal
jurisdiction over a non-resident defendant if: (1) the long-arm
statute of the forum state confers personal jurisdiction over that
defendant; and (2) the exercise of such jurisdiction by the forum
state is consistent with the due process clause of the Fourteenth
Amendment to the United States Constitution.  See Wilson v. Belin,
20 F.3d 644, 646 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994);
Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418
(5th Cir. 1993) (same); Ham v. La Cienega Music Co., 4 F.3d 413,
415 (5th Cir. 1993) (same).  This Court need only address the
latter inquiry, since the Texas Supreme Court has established that
the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-
045, extends to the limits of federal due process.  See Moncrief
Oil Intern. Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007)
("The Texas long-arm statute extends personal jurisdiction to the
permissible limits of the Due Process Clause, and so we only need
to determine whether the exercise of personal jurisdiction in this
case would comport with those federal guarantees."); Religious
Tech. Ctr. v. Liebreich, 339 F.3d 369, 373 (5th Cir. 2003)
("Because the Texas Long Arm Statute is coextensive with the
confines of due process, questions of personal jurisdiction in

Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process."); see also Tex. Civ. Prac. & Rem. Code § 17.041, et seq. (Texas Long Arm Statute).

### C.   Due Process Clause

"The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant if: 1) that defendant has 'minimum contacts' with the forum state; and 2) the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"   Brown, 220 F.3d at 417 (5th Cir. 2000) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); Wilson, 20 F.3d at 647 (same). "Both prongs of th[is] due process test must be met ... if the United States District Court for the Southern District of Texas is to exercise personal jurisdiction over [the non-resident defendant]." Ruston Gas Turbines, Inc., 9 F.3d at 418. "Once the plaintiff has made out a prima facie showing under the first [minimum contacts] prong, the burden shifts to the defendant to show, under the second prong of the constitutional due process inquiry, that the exercise of jurisdiction would not comply with 'fair play' and 'substantial justice.'" Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004) (citing Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002)).

### 1.   Minimum Contacts

To satisfy the "minimum contacts" prong of the test set forth

above, the Supreme Court has established standards for "specific"
jurisdiction and "general" jurisdiction. Wilson, 20 F.3d at 647;
Ruston Gas Turbines, Inc., 9 F.3d at 418 (the "minimum contacts"
prong of the due process test has "been refined to determine two
types of personal jurisdiction -- specific or general."); Luv N'
Care, Ltd., 438 F.3d at 469 ("Jurisdiction may be general or
specific.").

### a.   Specific Jurisdiction

A court may exercise "specific jurisdiction" over a non-
resident defendant when the suit arises from or relates to the
defendant's contacts within the forum state. See Helicopteros
Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n. 8
(1984); Freudensprung, 379 F.3d at 343 ("A court may exercise
specific jurisdiction when (1) the defendant purposely directed its
activities toward the forum state or purposely availed itself of
the privileges of conducting activities there; and (2) the
controversy arises out of or is related to the defendants['']
contacts with the forum state."); Burger King Corp. v. Rudzewicz,
471 U.S. 462, 475 (1985) (the "minimum contacts" prong, for
specific jurisdiction purposes, is satisfied by actions, or even a
single act, by which the non-resident defendant "purposefully
avails itself of the privilege of conducting activities within the
forum state, thus invoking the benefits and protections of its
laws."). The defendant's purposeful availment must be such that it

"should reasonably anticipate being haled into court" in the forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).   A  single  act  by  the  non-resident  defendant  can  be sufficient to establish specific jurisdiction, if that act gives rise to the claim being asserted.  See Ruston Gas Turbines, Inc., 9 F.3d at 419.

**b.   General Jurisdiction**

In contrast, when the act or transaction being sued upon is unrelated to the non-resident defendant's contacts with the forum, personal  jurisdiction  does  not  exist  unless  the  defendant  has sufficient  "continuous  and  systematic  contacts"  with  the  forum state to support an exercise of "general jurisdiction."   Nuovo Pignone, SpA, 310 F.3d at 378 (citing Helicopteros Nacionales de Columbia,  S.A.,  466  U.S.  at  414).   In  order  to  invoke  the jurisdiction of the court, contacts with the forum state must be continuous  and  systematic  enough  that  the  defendants  should reasonably  expect  to  be  sued  in  the  state.   See Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 327 (5th Cir. 1996); Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291, 295 (5th Cir. 1999) ("General  personal  jurisdiction  is  found  when  the  nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.").

**2.   Fair Play and Substantial Justice**

Even if minimum contacts exist, due process concerns will not

be satisfied if entertaining suit against the non-resident defendant offends "traditional notions of fair play and substantial justice." <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of California</u>, 480 U.S. 102, 112 (1987); <u>World-Wide Volkswagen</u>, 444 U.S. at 292; <u>Int'l Shoe</u>, 326 U.S. at 316. In determining this fundamental fairness issue, the Court must examine the following factors: (1) the defendant's burden in litigating the suit; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) "the shared interest of the several [s]tates in furthering fundamental substantive social policies." <u>Asahi</u>, 480 U.S. at 112; <u>World-Wide Volkswagen</u>, 444 U.S. at 292; <u>Marathon Oil Co.</u>, 182 F.3d at 295.

**D.   This Court has Personal Jurisdiction over Swan**

In this case, resolving all factual disputes in favor of Plaintiffs, Swan does have the requisite minimum contacts with the State of Texas to be sued in this Court, and maintenance of Plaintiffs' lawsuit against Swan will not offend traditional notions of fair play and substantial justice.[5]

**1.   Minimum Contacts: Specific Jurisdiction**

Because it was eminently foreseeable to Swan that the Pirates of the Sea waterslide would likely be sold in a Sam's Club

---

[5]As noted above, in the context of a Rule 12(b)(2) motion to dismiss, the Court must construe all disputed facts in favor of Plaintiffs. <u>See Brown</u>, 220 F.3d at 417.

in Texas, this Court has specific jurisdiction over Swan regarding the claims in Plaintiffs' Amended Complaint.[6]

### a.   Stream of Commerce Theory

Swan has taken various "purposeful acts" to avail itself of the jurisdiction of the forum state.  These purposeful acts include the following: (1) manufacturing the Pirates of the Sea waterslide specifically for purchase and re-sale by Sam's USA; and (2) placing the waterslide in the stream of commerce by delivering it to Sam's freight forwarder in China, so that the waterslide could be sold at United States Sam's Club locations.  Because of these purposeful acts, this Court has specific jurisdiction over Swan based on the "stream of commerce" theory described below.  See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 273 (5th Cir. 2006).

"The stream-of-commerce theory permits the exercise of personal jurisdiction over a nonresident defendant that 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" Id. (citing World-Wide Volkswagen Corp., 444 U.S. at 298).  "The

------

[6]The Court holds that it has specific jurisdiction over Swan with regard to Plaintiffs' claims concerning the Pirates of the Sea waterslide.  However, the Court does not hold that it has general jurisdiction over Swan, as Swan does not have the requisite continuous, substantial and systematic contacts with the forum state that are necessary to establish general jurisdiction.  (See Tong Aff., ¶¶ 9-10, stating that Swan has no employees in Texas, does not own or lease property in Texas, has never had a bank account in Texas, has never been registered to do business in Texas, has not had any employees in Texas, and has never sent its employees to Texas for business purposes.)

foreseeability required in the products liability context is 'not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  Id. (citing World-Wide Volkswagen Corp., 444 U.S. at 297).  If a defendant expected that its products would be purchased and used in the forum state, then that defendant has minimum contacts with the forum state to establish jurisdiction.  See Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987) (emphasis added) ("When the contact stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the product into the stream of commerce **with the expectation that it would be purchased by or used by consumers in the forum state**); see also Luv N' Care, 438 F.3d at 470-71 (finding jurisdiction over a defendant that expected its products to be purchased in the forum state, as evidenced by the defendant filling purchase orders for items bound for the forum state, and defendant sending invoices to the retailer regarding the products bound for the forum state).

### b.   Court Has Specific Jurisdiction over Swan

In this case, Plaintiffs have submitted evidence showing that Swan was fully aware that it manufactured the Pirates of the Sea waterslide for Sam's USA, to be sold at United States Sam's Club

locations.  (<u>See</u>, <u>e.g.</u>, Sept. 16, 2005 email from Raymond Tong of Swan to Ronnen Harary, classifying the Pirates of the Sea slide as the "**Sam's** Pirate Slide" (emphasis added); July 2, 2005 email from Mary Chow to "Wincy" and Claire Wong of Swan, entitled "Sam's USA – final selected items," stating "Sam's USA buyer (in Shanghai trip last week) finally selected: 69055 Pirate of the Sea [waterslide]", and asking Swan employees to provide information to be transmitted to Sam's.).  Plaintiffs have also submitted evidence showing that Swan was involved in modifications to the design of the waterslide, per various Sam's Club specifications.  Specifically, Sam's made several requests regarding the height and aesthetic design of the waterslide, and Sam's made repeated requests to reduce the per unit cost of each waterslide.  (<u>See</u>, <u>e.g.</u>, July, 2005 email from "Wincy" of Swan to Victor Yip, regarding price quotations for the Pirates of the Sea slide, per Sam's size specifications; July 28, 2005 email from "Wincy" of Swan to Victor Yip entitled "Sam's Pirates of the Seas - 69055", regarding Sam's design specifications for the waterslide.).  It appears that in order to achieve a price acceptable to Sam's USA, Swan had to reduce its profit margin on the Pirates of the Sea waterslide production.  (<u>See</u> July 25, 2005 email from Victor Yip to Paul Draffin and Robert O'Brien, stating that to meet Sam's price specifications, Spin Master employees had "requested Swan to reduce: [Swan's] labor cost; & [Swan's] mark-up"; Aug. 2, 2005 email from James Martin to Victor Yip, Robert

O'Brien and Winifer Chung, stating that Mr. Martin met with Raymond Tong of Swan and Swan agreed to reduced profit margins on the Pirates of the Sea slide.).

Based on the above, Swan was fully aware that the Pirates of the Sea waterslides were being produced for Sam's USA, to be sold at United States Sam's Club locations.  Swan did not "blindly" produce the waterslides and place them into the stream of commerce, where it was merely possible that some of the waterslides would wind up in Texas.  Rather, Swan worked closely with Sam's USA on the design of the slide, including the slide's specific height, platform size, valve placement, and pirate-ship appearance.  Swan responded to Sam's specifications for product design, and Swan was responsive to Sam's repeated requests to cut the cost of the slide. Swan even admits in its motion to dismiss that Swan delivered the waterslide in question to Maersk Logistics (China) Co. Ltd., which was the "freight forwarder" **for Sam's Club.**   (Tong Aff., ¶ 7). Swan knew that the waterslides were exclusively going to the United States, to be sold by a specific retailer with stores in Texas. Given these circumstances, Swan should have reasonably anticipated that at least one of the Pirates of the Sea slides would be purchased by a consumer in Texas, and that Swan could be haled into court on a claim involving such a slide.  Accordingly, because Swan delivered the waterslide "into the stream of commerce with the expectation that it would be purchased by or used by consumers on

the forum state", the Court has specific jurisdiction over Swan in this case. <u>Bearry</u>, 818 F.2d at 374; <u>see also</u> <u>Seiferth</u>, 472 F.3d at 273.[7]

## 2.   <u>Jurisdiction Over Swan Does Not Offend Traditional Notions of Fair Play and Substantial Justice</u>

As noted above, in determining whether the exercise of jurisdiction over Swan offends traditional notions of fair play and substantial justice, the Court must consider the following five factors:   (1) Swan's burden in litigating the suit; (2) the interests of the State of Texas; (3) Plaintiffs' interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) "the shared interest of the several [s]tates in furthering fundamental substantive social policies." <u>Asahi</u>, 480 U.S. at 112.

In this case, Swan manufactured its product in China, fully intending that the product be sold at Sam's Club locations in the United States. (<u>See</u>, <u>generally</u>, Exh. 4 to Plaintiffs' Response). Given this situation, the Court's analysis of the above-listed factors weighs in favor of the exercise of personal jurisdiction over Swan.   First, Texas has a strong interest in ensuring the

---

[7]The Court notes that Swan's contacts with the State of Texas concern the manufacture and design of the Pirates of the Sea waterslide, and Plaintiffs' lawsuit centers on alleged defects with the subject slide.  Accordingly, Plaintiff's claims against Swan arise from Swan's connections with the forum state.

safety and reliability of products such as the waterslide in question, that are manufactured abroad with the specific intent to be sold by a retailer with numerous Texas locations.   Second, Plaintiffs have a strong interest in convenient and effective relief.   If this Court did not have personal jurisdiction over Swan, Plaintiffs may have to seek redress from Swan in Hong Kong and/or mainland China.   This would be highly inconvenient for the Texas-resident Plaintiffs.   Further, in this case, the "several [s]tates" have a shared interest in ensuring that an entity may not manufacture an item abroad, fully intending that the product be sold by a specific United States retailer, yet be able to avoid personal jurisdiction if something goes wrong with the product. While it is a burden on Swan to defend Plaintiffs' lawsuit in Texas, the other interests described above outweigh Swan's burden of litigating in this Court.

Accordingly, based on the above, Swan does have minimum contacts with the State of Texas, and maintenance of Plaintiffs' suit against Swan does not offend traditional notions of fair play and substantial justice.   This Court does have personal jurisdiction over Swan, and Swan's motion to dismiss must be DENIED.

**V.   <u>Conclusion</u>**

For the reasons set forth above, Swan's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (D.E. 35) is

hereby DENIED.

SIGNED and ENTERED this 15th day of May, 2008.

Janis Graham Jack
United States District Judge